**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **TARA HAGINS,**<br><br>       **Plaintiff,**<br><br>vs.<br><br>**NORWALK    HOSPITAL    and OMAIRA  COLON-HILL,**<br>**in her individual capacity**<br><br>       **Defendants.** | **CASE NO.:** |

<u>**COMPLAINT & DEMAND FOR JURY TRIAL**</u>

COMES NOW Plaintiff Tara Hagins ("**Hagins**," "**Plaintiff**," or "**plaintiff**"), by and through her undersigned counsel, Daugherty Law Group, LLC, located  at 260 Madison Avenue, Suite 8032, New York, New York, 10016, and as and for her complaint against defendants Norwalk Hospital ("**Defendant Hospital**") and Omaira  Colon-Hill ("**Defendant Colon-Hill**") arising from  her  duties  and employment with Defendant Hospital, individually in her capacity as an employee of Defendant Hospital states and alleges as follows:

**I.    INTRODUCTION**

1.      This is an action for money damages to redress the deprivation by Defendant Hospital, through its agents, servants and/or employees, of the rights secured to Plaintiff by the Constitution and laws of the United States, as well as

those of the State of Connecticut. Defendant Hospital, through its agents, servants and/or employees, were responsible for violating Plaintiff's federal and state statutory rights, and thereby improperly deprived her of the freedom and liberty afforded to all citizens of this State and Country, without any cause, justification or excuse.

2.      This is an action by Plaintiff against her employer and supervisor for (1) race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et. seq., (2) race and sex discrimination under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-51 et seq., and (3) race and color discrimination in violation of 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States of America.

## II.   **JURISDICTION**

3.      Jurisdiction in this Court is invoked under the provisions of the Judicial Code at 28 U.S.C. Sections 1331, 1343, and 1367, the Civil Rights Acts of 1964 and 1991, Title VII thereof and Article 1, Section 1 and 10 of the Connecticut Constitution which confers pendent jurisdiction upon this Court with respect to any cause of action under state law.

## III.   **VENUE**

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (2), venue is proper within this District because Defendant, Norwalk Hospital, is located in Norwalk, Connecticut, and Defendant Omaira Colon-Hill works in Norwalk, Connecticut, resides in

Connecticut, and the conduct underlying Plaintiff's claims occurred in or around Norwalk, Connecticut.

## IV.  **EXHAUSTION OF REMEDIES**

5.     Plaintiff timely filed her complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on or about February 4, 2019 against Defendant Norwalk Hospital. Plaintiff received a Release of Jurisdiction ("ROJ") from the CHRO on March 2, 2021 and a Notice of Right to Sue ("NORTS") from the EEOC on March 9, 2021.  She has filed these claims within 90 days of her receipt of the ROJ and NORTS, respectively.

## V.  **PARTIES**

6.     The Plaintiff is an individual who resides at 574 Howe Avenue, Shelton, Connecticut, 06484. Hagins was employed as a phlebotomists for Defendant Hospital from May 14, 2018 through October 31, 2018.

7.     At all relevant times, Hagins was an "employee" as defined by Title VII.

8.     Hagins is African-American of race and her color is Black.

9.     Hagins identifies as a Lesbian Female and her sexual orientation was known by Defendant Hospital when it terminated her employment.

10.     The Defendant, Norwalk Hospital ("Hospital") is an acute care, academic hospital that provides patients with medical, surgical, and wellness services. Its principal place of business is located at 34 Maple Street, Norwalk, Connecticut 06856. At all relevant times, Defendant Hospital employed more than 50 persons.

11.     The Defendant, Omaira Colon-Hill ("Defendant Colon-Hill"), is currently employed by Defendant Hospital as the Supervisor of Specimen Procurement. Defendant Colon-Hill is a heterosexual Female of Hispanic nationality and resides in Connecticut.

## VI.   **FACTS**

12.     Ms. Tara Hagins, an African-American female, began working for Defendant Hospital, as a phlebotomists, on or around May 14, 2018.

13.     Plaintiff was a member of a team of phlebotomist. The team consisted of seven (7) total members. Plaintiff was the only African American and the only Lesbian working within her team of phlebotomist.

14.     Plaintiff has short hair and her appearance does not conform to sex stereotypes.

15.     Plaintiff's direct supervisor was Defendant Colon-Hill.

16.     Within Plaintiff's first week of training, Defendant Colon-Hill called Hagins a "*weirdo.*"

17.     In May or June of 2018, two of the phlebotomist on Plaintiff's team were planning a group dinner night for "the girls and their boyfriends/husbands" when one Hispanic phlebotomists said to Plaintiff "don't worry about it, we know you don't have a boyfriend."

18.     Defendant Colon-Hill would yell at some of the phlebotomists in front of patients. On one occasion, Plaintiff's co-worker Susan, yelled through the phone at Defendant Colon-Hill "I don't need to take this shit" and slammed the phone down. Plaintiff was in the lab with Susan at the time Susan yelled at

Defendant Colon-Hill through the phone. Susan was never reprimanded for that behavior even though Plaintiff told Defendant Colon-Hill that patients were present in the lab during their conversation.

19.    A few weeks later, in or around, June 2018, Defendant Colon-Hill started to make comments about Plaintiff's salary versus some of the other phlebotomists' salaries. Defendant Colon-Hill advised Plaintiff not to speak to any of the other phlebotomist about her pay because Plaintiff and "Anna [were] the only two phlebotomists making that type of pay." Plaintiff told Defendant Colon-Hill that she would never talk about her pay with her co-workers.

20.    In or around August 2018, after Plaintiff missed a test on a requisition order, Defendant Colon-Hill stated to Plaintiff, "with the amount of money you're making, you need to pay more attention . . . [because] you make three to four more dollars than all the other phlebotomists." Plaintiff told Defendant Colon-Hill she didn't need to know that.

21.    Defendant Colon-Hill would refer to Plaintiff as "pumpkin" and "babe."

22.    On one occasion, Defendant Colon-Hill called Plaintiff via telephone while Plaintiff was at work to ask Plaintiff "do you watch Wentworth?" Plaintiff answered "no" and Defendant Colon-Hill responded, "well okay then you can't be my buddy," and rudely hung up the phone.

23.    On August 30, 2018 at 9:54 PM, Defendant Colon-Hill sent a text message to Plaintiff to communicate Plaintiff's work assignment for the following morning. Defendant Colon-Hill's text stated "so sorry about the late text, can you go to NCHC tomorrow at 8 please!!??"

24.     Defendant Colon-Hill did not update Plaintiff's schedule to reflect the change. According to Plaintiff's *schedule*, she worked at Outreach/OST from 11:00 AM – 7:30 PM on August 31, 2018.

25.     On September 24, 2018 at 5:41 PM, Plaintiff sent a text to Defendant Colon-Hill. The text from Plaintiff to Defendant Colon-Hill stated, "I just clocked out at 5:36, we had a very hard stick, but I had to fix the transfer list. I'm not sure what she's clicking but specimens up already going out (sic) or still on the new transfer list, so earlier to transfer this went out with one box of specimens and just now that's going to be to transfer list but all the blood is there."

26.     On that same date, September 24, 2018 at 6:05 PM, Defendant Colon-Hill sent a text message to Plaintiff. The text from Defendant Colon-Hill to Plaintiff stated, "Ok so that's why I told you Friday that she was with you. It's her first time in a psc did you explain things to her like I asked you? There should not be 2 transfer list for 1 location. Should be only one regardless of who starts it." At 6:06 PM, Defendant Colon-Hill added, "something that should have been picked up earlier."

27.     On that same date, at 6:12 PM, Plaintiff wrote to Defendant Colon-Hill, "I did exactly what you told me to do, but while I'm drawing a patient I can't see what she's doing. She'll be there tomorrow with Rebecca and I'm sure Rebecca will show her also exactly what to do." At 6:20 PM, Defendant Colon-Hill wrote Plaintiff, "Tara she doesn't need a sitter she can draw blood extremely well however she has never done a transfer list today was her first day there. I can't always expect Rebecca and Rosalba to always be the ones training the new

staff. You are part of this team as well and you have already passed your probation so that being said I would appreciate the next time you have a newbie with you, you actually show her what you know."

28.    Some phlebotomists on Plaintiff's team were responsible for training new phlebotomists.

29.    According to Plaintiff's job offer and job description, she was not responsible for *training* new staff. She was hired as a "float phlebotomist."

30.    The next day or so, Defendant Colon-Hill confronted Plaintiff at Norwalk Community Health Center and pulled her aside to talk one-on-one. In the hallway, Defendant Colon-Hill stated to Plaintiff, "why am I feeling animosity between the two of us . . . c'mon Tara we are two grown women, you can tell me what is on your mind," Plaintiff responded to Defendant Colon-Hill, "I'm fine, there is nothing wrong with me." Defendant Colon-Hill then questioned whether or not Plaintiff was a "team player," Plaintiff responded to Defendant Colon-Hill, "yes I am a team player, but training is not in my job description." Defendant Colon-Hill then stated to Plaintiff, "with the money you're making, you should want to train," Plaintiff replied to Defendant Colon-Hill, "what does how much money I make have to do with training a co-worker?" Defendant Colon-Hill ended the conversation and walked away.

31.    On October 3, 2018 at 6:14 AM, Defendant Colon-Hill sent a text message to Plaintiff to notify Plaintiff that her schedule had been changed. Defendant Colon-Hill stated, "Good morning, I have a call out need you to cover NCHC but please start off at 40 cross street till Linda gets there." That same day

at 2:19 PM, Plaintiff sent a text to Defendant Colon-Hill which stated, "Call me. I'm sick. Would like to leave early." With permission, Plaintiff left early on October 3, 2018.

32.    Defendant Colon-Hill did not update Plaintiff's schedule to reflect the change. According to Plaintiff's *schedule*, she worked at 40 Cross Street from 7:30 AM – 4:00 PM on October 3, 2018.

33.    On October 8, 2018 Defendant Colon-Hill was very rude and short with Plaintiff. Plaintiff arrived at an outpatient lab in Westport to find her co-worker Amanda Collado ("Collado") and Defendant Colon-Hill in Room 2 conversing. As Plaintiff approached Room 1, Defendant Colon-Hill stated to Plaintiff "she will be using that room," referring to Collado. Plaintiff responded "OK" and patiently waited in Room 1 for Defendant Colon-Hill and Collado to finish their conversation in Room 2. A few minutes later, Defendant Colon-Hill and Collado came into Room 1 and Defendant Colon-Hill aggressively stated to Plaintiff, "didn't you hear me, I said she will be using this room," Plaintiff replied, "yes Omaira I heard you the first time." As Plaintiff gathered her belongings, Defendant Colon-Hill waved her right hand in a dismissal manner towards Plaintiff and said "then leave!" Plaintiff responded, "excuse me?" with a humiliated look on her face. Defendant Colon-Hill then stated, "are you good?" Plaintiff responded, "yes, I'm good," and walked out of Room 1 into Room 2.

34.    A couple days later, on October 10, 2018 Defendant Colon-Hill notified Plaintiff that she was suspended "because something happened at the Outreach lab."

35.    On October 10, 2018, at or around 9:10 a.m., Human Resource Manager, Kelly Garretson ("Garretson"), sent the Connecticut Health Care Associates' ("CHCA") Union President, Mary Florio ("Florio"), and CHCA union representative, Anne Fenelon ("Fenelon") an email. Kelly Garretson is Caucasian of race and white of color.

36.    The email from Garretson to Florio and Fenelon stated, "Please be aware due to information related to potential time fraud and perceived retaliatory behavior, Tara Higgins (sic) was suspended pending investigation. Tara has requested union representation to meet and discuss information obtained. The supervisor and I can be flexible for a Friday, 10/12 investigatory meeting at Norwalk Hospital. Would a CHCA rep be available to attend and what time? Tara is hanging up on her supervisor, so I will request whomever from CHCA can attend this investigatory meeting ensure Tara can also be present. Please be aware Tara Higgins (sic) is reaching out across her colleagues asking them what they told her supervisor, she was told eliminate such contact."

37.    Plaintiff denies ever hanging up on Defendant Colon-Hill. Plaintiff did, however, contact some of her co-workers to ask them if they knew why she was suspended because Defendant Colon-Hill refused to tell Plaintiff.

38.    On October 10, 2018, at or around 10:13 a.m., Fenelon sent Garretson an email: "Kelly, I can be available on Friday at 11 am for the investigatory meeting. Please confirm that time will work for you. The grievant is aware of the tentative investigatory meeting. Thank you."

39.   On October 10, 2018, at or around 4:20 p.m., Garretson sent Fenelon the following email: "Thank you. Friday, 10/12 at 11am at Norwalk Hospital is confirmed."

40.   On October 12, 2018, for the first time, at or around 11:00 a.m., Defendant Colon-Hill accused Plaintiff of "time fraud." During the meeting, Plaintiff explained her whereabouts on each occasion; *whereas Defendant Hospital was unable to produce any evidence to support Defendant Colon-Hill's allegations.*  Due to the lack of evidence to support *Defendant Colon-Hill's allegations* at the investigatory meeting, Garretson informed all parties involved that she would commence an investigation into Defendant Colon-Hill's allegations, and announce their decision by 10/16 or 10/17.

41.   On October 22, 2018, at or around 2:06 p.m., Fenelon sent Garretson the following email: "Kelly, Tara Higgins (sic) was suspended pending investigation on 10/10. An investigatory meeting took place on 10/12 where employee Tara Higgins (sic) was questioned and remained out of work. I am curious to know where you are in the process. Please give me an update as soon as possible. Thank You!"

42.   On October 26, 2018, at or around 11:24 a.m., Fenelon sent Garretson the following email: "Kelly, I emailed you on October 22nd concerning employee Higgins (sic) who is out for over two weeks. You did not respond to my email or heard back from you concerning that matter. When we left the meeting on 10/12 you stated that you expected the investigation to be concluded by 10/16 or 10/17. It's been over two weeks since the investigatory meeting took

place and since Tara Higgins (sic) has been suspended without pay. It's unfair to Tara because she has a family and responsibilities. At this point, the Union is asking that Tara Higgins gets paid for the time being until the hospital finalizes its investigation. Having an employee out for over two weeks with no pay and contact is unrealistic and beyond unreasonable. We urge the hospital to conclude its investigation as soon as possible and advise the Union of its outcome."

43.   On the same day, October 26, 2018, at or around 11:35 a.m., Garretson sent Fenelon the following email: "Anne: I have read your concern. We are finalizing an intensive and complex review of the IT based time records. Based on what I see so far, I will not authorize paying Tara for time on suspension. I expect to make final decision on Monday, 10/29 in which all parties will be informed of the decision."

44.   On the same date, October 26, 2018, at or around 11:45 a.m., Fenelon sent Garretson the following email: "Kelly, Thank you for your prompt response and for reading my concerns. I understand that this was somewhat a complex investigation and need more time than expected at the same time, it couldn't be ongoing indefinitely. I am hoping that on Monday we can have a different conversation related to her future at WCHN. Once again, thank you and I appreciate your response."

45.   On October 31, 2018, at or around 11:32 a.m., union president, Mary Florio, sent Garretson the following email: "Hello Kelly and Jeff, Upon review of the Tara Higgins (sic) situation, it is evident that the employee has been

in non-pay status for 3 weeks. On 10/12, the Employer stated that a response could be expected by 10/16 or 10/17. This is an unacceptable financial burden placed on your employee because the employer is unable or unwilling to review financial records in a timely manner. Please provide a prompt response. Without that, the Union will be forced to pursue further action. Thank you in advance for your anticipated response."

46.     That same date, October 31, 2018 Garretson sent Fenelon and Florio the following email: "On Friday, October 12th at Norwalk Hospital - Tara Hagins, Omaira Colon-Hill, yourself and I met to review concerns raised by the Director of the Norwalk Community Health Center, three colleagues and Tara's supervisor, Omaira. The concerns specifically were related to Tara missing/leaving her work location throughout her shifts for long spans of time ranging from 30 minutes to over 2 hours thereby leaving a trainee to draw 70% of the patients on two of the days under review and over 80% of patients each of the four days under review. We reviewed the number of draws Tara had compared to her colleagues which demonstrated a large gap in Tara's draws vs. her colleague(s) as well as large gaps between patients. Per our conversation 10/12, I stated I had requested an IT Security review of Tara's web time stamps within Kronos, I have received confirmation that Tara could not have completed all the web stamps within Kronos, specifically 13 out of 20 time stamps were completed over 40 miles away from her physical work location. At this time, the decision to terminate Tara Hagins for time fraud has been made effective immediately. Attached is the letter that will be sent to Tara Hagins home address.

She is not eligible for PTO pay out and I will dispute her unemployment based on the cause of her termination."

47.    On October 31, 2018 at approximately 3:42 PM Fenelon sent Garretson the following email: " Kelly, Attached is a Step 2 grievance on behalf of Ms. Higgins (sic) related to her unfair termination. We would like to meet and discuss her grievance as soon as possible. Please send me some dates for next week, or the week after. The Union is also requesting the following documents: (1) All documents related to the termination including all statements, investigative notes etc.; (2) All prior disciplines; (3) Kronos record; [and] (4) IT record. Please submit all documents prior to the step 2 grievance meeting or by November 9th, 2018. If you have any questions or concerns, please do not hesitate to contact me."

48.    On November 12, 2018 at 2:12 PM Garretson sent Defendant Colon-Hill the following email: "Can you please fill-in Tara's posted schedule for below dates if NCHC or On-Stop. I have to schedule a Step 2 meeting." The dates listed were 9/4/2018, 9/5/2018, 9/6/2018, 9/25/2018, 9/26/2018, 9/27/2018, 9/28/2018, and 10/3/2018.

49.    On November 12, 2018 at 5:59 PM Defendant Colon-Hill sent Garretson the following email: "I have attached Tara's scheduled times for the days in question."

50.    On November 13, 2018 at 4:55 PM Garretson sent Defendant Colon-Hill the following email: "For 9/4 where you state left for MD appt, that was what the other Phlebs stated but you were not aware or had approved correct?"

51.   On November 13, 2018 at 5:49 PM Defendant Colon-Hill sent Garretson the following email" "Hi Kelly, Tara had approval to leave early on 9/5/18, She left at 3:00pm. On 9/26/18 she left the PSC to go have an Ultrasound done as well as B/W all this on company time. She did not have my approval for the 26th or any other day after. On 10/3/18 she text me asking to leave early, She punched out at 2:53pm."

52.   Plaintiff denies having an Ultrasound done while on the clock. Plaintiff had the ultrasound done during her lunch break. She didn't leave the campus, she was checked out at Norwalk Hospital.

53.   On November 26, 2018 Garretson sent Fenelon the following email: "Tara Hagins was terminated for just cause and the management team will not consider reinstatement. Step 2 is denied. Jeff Pegula will provide the requested information as stated below."

54.   On December 10, 2018 at 8:06 PM Jeffrey Pegula sent Fenelon the following email" "Hi Anne: This email and its attachments are provided in response to your email requesting information and/or additional documents relating to Tara Hagins. In that email, you requested the following: (1) All documents related to the termination including all statements, investigative notes etc.; Response: Please see Exhibit A. (2) All prior disciplines; Response: *There are no prior disciplines.* (3) Kronos record; Response: Please see Exhibit B. (4) IT record; Response: WCHN *objects* to this request as overly broad to the extent the request calls for a production of documents that is non-specific and not likely relevant. Please clarify and explain your request including relevance of

such information. Please contact me within five (5) days if there are any questions concerning the objections, information produced by the Network or if you would like to discuss accommodations to your request."

55.     Defendant Colon-Hill told Plaintiff and others on several occasions that "I always go to bat for my phlebs," and "if you ever think you're going to be late for work, just call me and I'll punch you in."

56.     Plaintiff is aware of Defendant Colon-Hill clocking in some of the Hispanic phlebotomists, but Plaintiff never asked Defendant Colon-Hill to clock her in for any reason.

57.     Defendant Colon-Hill would call Plaintiff to tell her to clock-in at her scheduled location and to then proceed to the re-assigned location.

58.     Defendant Colon-Hill did not update Plaintiff's schedule to reflect a reassignment after she reassigned Plaintiff to a different location.

59.     Plaintiff traveled to multiple locations each day because she was hired as a "float Phlebotomist."

60.     On some days, Plaintiff would be required to travel to three different locations in one day.

61.     For example, according to Plaintiff's schedule, on September 27, 2018, Plaintiff was required to start work at the outreach lab at 34 Maple street at 8:00 AM, then travel to 120 Connecticut Ave. at 9:00 AM  (10 miles away), then travel back to Norwalk Hospital (10 miles away during mid-day traffic)  from 3:30 – 5:30.

62.     Plaintiff was the only Phlebotomists required to travel to three different locations on September 27, 2018. She was the only Phlebotomists required to

travel at all that day. The other phlebotomists were only required to work at one location on September 27, 2018.

63.   Defendant Colon-Hill communicated the changes to Plaintiff's schedule by calling or texting Plaintiff.

64.    If Defendant Colon-Hill changed Plaintiff's schedule, only Defendant Colon-Hill and Plaintiff would know where Plaintiff was supposed to be that date because Defendant Colon-Hill would not update Plaintiff's schedule.

65.   Plaintiff traveled more than any other Phlebotomists.

66.   Throughout Plaintiff's tenure with Defendant Hospital, she was never formally or informally reprimanded for anything.

67.   Before Plaintiff was terminated, she was given her annual evaluation. Plaintiff received an overall rating of "fully meets expectations."

68.   Defendant Colon-Hill was aware that Plaintiff had fully met the expectations of the job in her annual review, so she intentionally sabotaged and set up Plaintiff by telling Garretson that Plaintiff was "stealing time."

69.   Defendant Colon-Hill withheld information from Garretson in an effort to sabotage Plaintiff.

70.   Garretson did not ask Defendant Colon-Hill for Plaintiff's schedule before she terminated Plaintiff on October 31, 2018.

71.   Garretson was unaware of the changes made to Plaintiff's schedule by Defendant Colon-Hill when she terminated Plaintiff on October 31, 2018.

72.     Garretson was also aware of Plaintiff's race and sexual preference before she terminated Plaintiff on October 31, 2018. Garretson met Plaintiff at the investigatory meeting on October 12, 2018.

73.     Defendant Hospital does not maintain a policy on the necessary amount of blood draws a phlebotomists must draw each day.

74.     Defendant Hospital does not maintain a policy on the percentage of blood draws each phlebotomists must draw each day.

75.     Defendant Hospital does not maintain a policy on how many phlebotomists can work on each requisition order.

76.     Defendant Hospital is aware that phlebotomists use an assembly line approach to complete some requisition orders when more than two phlebotomists are working at the same location.

77.     One phlebotomist may start the requisition order. Another phlebotomists may draw the blood, and another phlebotomist may sign the requisition order.

78.     Only the phlebotomist that signed the requisition order gets credit for that particular blood draw in Defendant Hospital's system.

79.     Despite the fact that Plaintiff's handwriting was on several requisition order forms, she did not receive credit for those orders if she didn't sign the order form.

80.     Defendant Hospital is justifying its termination of Plaintiff based on data( the amount of blood draws each phlebotomist performed each day at *one* location), written statements from three phlebotomists, and Defendant Colon-Hill.

81.     Plaintiff contends that the real reason she was terminated was because Defendant Colon-Hill has bias and prejudice against African Americans and Lesbian females.

82.     Defendant Hospital is liable based on a cat's paw theory. Defendant Colon-Hill's bias and prejudice motivated her decision to sabotage and set up Plaintiff by withholding information from Garretson. Garretson relied upon those statement and opinions from Defendant Colon-Hill.

83.     On or about February 4, 2019 Plaintiff timely filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").

**Defendant Hospital relied solely on the statements from Defendant Colon-Hill to initiate its investigation and justify its termination of Plaintiff**

84.     Plaintiff was terminated on October 31, 2018 *before* Defendant Hospital's Human Resource Manager, Kelly Garretson, requested Plaintiff's schedule from Defendant Colon-Hill on November 12, 2018.

85.     Defendant Hospital did not conduct a genuine investigation into Defendant Colon-Hill's allegations against Plaintiff. It is impossible to conduct a genuine investigation into *time fraud* without reviewing the employee's schedule first.

86.     Defendant Hospital did not interview all of Plaintiff's co-workers, but instead, delegated the responsibility of gathering statements from the phlebotomists to Defendant Colon-Hill. Defendant Colon-Hill handpicked the three phlebotomist she wanted to write a statement for Garretson.

87.    Garretson did not interview Amanda Collada before she issued Plaintiff's termination letter on October 31, 2018.

88.    Garretson did not interview Rosalba Rosario before she issued Plaintiff's termination letter on October 31, 2018.

89.    Garretson did not interview Rebecca Robles before she issued Plaintiff's termination letter on October 31, 2018.

90.    Garretson did not interview any phlebotomists on Plaintiff's team before she issued Plaintiff's termination letter on October 31, 2018.

91.    Garretson did not know that Plaintiff had permission from Defendant Colon-Hill to leave early on 9/5/2018 before she issued Plaintiff's termination letter on October 31, 2018.

92.    Garretson did not know that Defendant Colon-Hill would change Plaintiff's schedule via text message and phone call without making those changes to Plaintiff's schedule.

93.    Garretson did not know that Defendant Colon-Hill was the only person that would know Plaintiff's whereabouts each day because Defendant Colon-Hill made Plaintiff float (travel) more than any other Phlebotomist on Plaintiff's team.

94.    Garretson did not know that Defendant Colon-Hill gave Plaintiff permission to leave early on October 3, 2018 before she issued Plaintiff's termination letter on October 31, 2018.

95.   Garretson told Fenelon on October 31, 2018 that Plaintiff could not have completed all the web stamps within Kronos, because 13 out of 20 time stamps were completed over 40 miles away from her physical location.

96.   Garretson made that statement despite knowledge that employees can only clock-in at one of Defendant Hospital's locations. Garretson made that statement before she asked Defendant Colon-Hill for Plaintiff's schedule.

97.   Employees don't have access or the ability to clock-in from their personal telephones.

98.   Employees must clock-in at one of Defendant Hospital's physical locations.

99.   Garretson relied on Defendant Colon-Hill's allegations that Plaintiff was stealing time to terminate Plaintiff on October 31, 2018.

**Plaintiff was the only phlebotomist to travel on the dates in question but Garretson did not take that into account before she terminated Plaintiff on October 31, 2018**

100.   The only evidence Defendants have to support their time fraud accusations are the amount of blood draws Plaintiff performed on the following dates: 9/4/2018, 9/5/2018, 9/6/2018, 9/25/2018, 9/26/2018, 9/27/2018, 9/28/2018, and 10/3/2018.

101.   Plaintiff's draws on the above-listed dates were compared to one or two phlebotomist each day in question.

102.   For example, on September 5, 2018. Plaintiff is credited for 15 blood draws. Her co-worker, R. Roble, was credited with 36.

103.  Based on that data, Defendants allege Plaintiff committed time fraud on September 5, 2018.

104.  Garretson did not know that Plaintiff left early on September 5, 2018 when she terminated Plaintiff on October 31, 2018.

105.  For example, on September 25, 26, 27, 28, and October 3, 2018 (5 out of the 8 dates in question), Plaintiff was the *only* phlebotomists required to travel to multiple locations on those dates. Defendant Garretson did not take that into account when she determined that Plaintiff stole time on those dates. Defendant Colon-Hill did not explain that detail to Garretson before Garretson terminated Plaintiff.

106.  Plaintiff was expected to travel 10 miles during rush hour traffic from site to site on 5 of the 8 days in question.

107.  To make matters worse, Plaintiff's draws at 40 Cross St., NH One-Stop, or Outreach were not included in the data Garretson relied upon to terminate Plaintiff.

108.  For example, on September 27, 2018, the date she had to travel to three different locations. Only Plaintiff's draws from NCHC were considered by Garretson before she terminated Plaintiff.

109.  Garretson considered only the draws from NCHC when she determined Plaintiff stole time.

110.  Garretson did not include Plaintiff's draws from NH One-Stop on September 27, 2018. She concluded Plaintiff only performed 4 draws based solely on the data from NCHC. Ostensibly,  she did not know Plaintiff's schedule at the

time of Plaintiff's termination. She did not know that Plaintiff traveled to NH-One Stop at 3:30 PM on September 27, 2018.

111.    Plaintiff is the first phlebotomist to be terminated for failing to draw enough blood on any given day.  Plaintiff contends that her blood draw count was used as pretext to terminate her.

## IV: CAUSES OF ACTION

**COUNT ONE AGAINST DEFENDANT HOSPITAL:**
**[42 U.S.C. §200e, et. seq., Title VII Disparate Treatment]**
**RACE &  COLOR DISCRIMINATION**

112.    Paragraphs  1-111  of  this  Complaint  are  re-alleged  herein  as Paragraphs 1- 111 of the First Count.

113.    Defendant Hospital, through its  agents, servants and/or employees, were responsible for violating Plaintiff's federal statutory rights, and thereby improperly deprived her the freedom and liberty afforded to all citizens of this Country, without any cause, justification or excuse.

114.    Plaintiff's race and color was a motivating factor in Defendants' employment actions set forth above with respect to compensation, treatment, and other terms of employment.

115.    Plaintiff was the only African American phlebotomist under Defendant Colon-Hill's supervision.

116.    Plaintiff is the first phlebotomists Defendant Colon-Hill accused of stealing time.

117.    Defendant Colon-Hill initiated Defendant Hospital's investigation into whether or not Plaintiff was stealing time.

118.   Defendant Hospital did not conduct a full investigation into Defendant Colon-Hill's allegations.

119.   As a result of these unlawful actions of Defendant Hospital, Plaintiff has suffered and will continue to suffer economic damages and severe emotional trauma.

**COUNT TWO AGAINST DEFENDANT HOSPITAL:**
**[42 U.S.C. §200e, et seq., Title VII Disparate Treatment]**
**SEX DISCRIMINATION**

120.   Paragraphs 1-119 of this Complaint are re-alleged herein as Paragraphs 1- 119 of the Second Count.

121.   Defendant Hospital, through its agents, servants and/or employees, were responsible for violating Plaintiff's federal statutory rights, and thereby improperly deprived her the freedom and liberty afforded to all citizens of this Country, without any cause, justification or excuse.

122.   Plaintiff's sex was a motivating factor in Defendants' employment actions set forth above with respect to compensation, treatment, and other terms of employment.

123.   Plaintiff did not conform to sex stereotypes and that was a motivating factor in Defendants' employment actions set forth above with respect to compensation, treatment, and other terms of employment.

124.   Defendant Colon-Hill referred to Plaintiff as *Butch* when talking to a Defendant Hospital employee, Ashley Hutchinson.

125.   Butch is a derogatory word defined as a woman or girl, especially a lesbian or transgender woman who embraces identity markers that are associated

with traditional expressions of masculinity, as clothing, hairstyle, interests, or behaviors.

126.   Plaintiff's co-worker Amanda Collado placed quotation marks around the word girlfriend in her written statement to Garretson and Defendant Colon-Hill.

127.   Collado wrote, "she [Plaintiff] was very upset and started calling her "girlfriend" from Danbury." Collado placed quotation marks around the word girlfriend to highlight Plaintiff's sexual orientation.

128.   Collado harbored prejudice and bias against Plaintiff. That bias and prejudice motivated her statement to Garretson and Defendant Colon-Hill.

129.   Defendant Colon-Hill asked Collado to draft a damaging statement about Plaintiff to corroborate her time fraud allegations about Plaintiff.

130.   Garretson relied upon Collado's written statement to justify Plaintiff's termination. Even though Collado did not know Plaintiff's work schedule.

131.   On another occasion, Plaintiff was told by a Hispanic Phlebotomist, "we know you don't have a boyfriend."

132.   Plaintiff was the only Lesbian female working under Defendant Colon-Hill's supervision.

133.   Plaintiff is the first phlebotomists Defendant Colon-Hill accused of stealing time.

134.   Defendant Colon-Hill initiated Defendant Hospital's investigation into whether or not Plaintiff was stealing time.

135.   Defendant Hospital did not perform a thorough investigation into Defendant Colon-Hill's allegations.

136.   As a result of these unlawful actions of Defendant Hospital, Plaintiff has suffered and will continue to suffer economic damages and severe emotional trauma.


**COUNT THREE AGAINST DEFENDANT HOSPITAL:**
**CFEPA: RACE & COLOR DISCRIMINATION**

137.   Paragraphs 1-136 of this Complaint are re-alleged herein as Paragraphs 1- 136 of the Third Count.

138.   Defendant Hospital, through its  agents, servants and/or employees, were responsible for violating Plaintiff's state rights, and thereby improperly deprived her the freedom and liberty afforded to all citizens of Connecticut, without any cause, justification or excuse.

139.   Plaintiff's race and color was a motivating factor in Defendants' employment actions set forth above with respect to compensation, treatment, and other terms of employment.

140.   Defendant Colon-Hill initiated Defendant Hospital's investigation into whether or not Plaintiff was stealing time.

141.   Defendant Hospital did not perform a thorough investigation into Defendant Colon-Hill's allegations.

142.   As a result of these unlawful actions of Defendant Hospital, Plaintiff has suffered and will continue to suffer economic damages and severe emotional trauma.

**COUNT FOUR AGAINST DEFENDANT HOSPITAL:**
**CFEPA: SEX DISCRIMINATION**

143.   Paragraphs 1-142 of this Complaint are re-alleged herein as Paragraphs 1- 142 of the Fourth Count.

144.   Plaintiff's sex was a motivating factor in Defendants' employment actions set forth above with respect to compensation, treatment, and other terms of employment.

145.   Plaintiff did not conform to sex stereotypes and that was a motivating factor in Defendant Hospital's employment actions set forth above with respect to compensation, treatment, and other terms of employment.

146.   As a result of these unlawful actions of Defendant Hospital, Plaintiff has suffered and will continue to suffer economic damages and sever emotional trauma.

**COUNT FIVE AGAINST ALL DEFENDANTS:**
**[42 U.S.C. § 1981 and 14th Amendment of United States Constitution]**
**RACE & COLOR DISCRIMINATION**

147.   Paragraphs 1-146 of this Complaint are re-alleged herein as Paragraphs 1-146 of this Fifth Count.

148.   At all times herein, Defendant Colon-Hill was Plaintiff's direct supervisor.

149.   Defendant Colon-Hill is a Hispanic Female.

150.   Plaintiff's race and color was a but-for cause of Defendants' employment actions as set forth above with respect to compensation, treatment, and other terms of employment.

151.   Defendant Colon-Hill initiated Defendant Hospital's investigation into whether or not Plaintiff was stealing time. Defendant Colon-Hill sabotaged and set up Plaintiff with the intention of getting her fired.

152.   Defendant Hospital did not perform a thorough investigation into Defendant Colon-Hill's allegations.

153.   Defendant Hospital relied upon Defendant Colon-Hill's statements when it suspended Plaintiff and initiated an investigation.

154.   Defendant Colon-Hill initiated the time fraud investigation with the intention that Plaintiff would be terminated.

155.   Defendant Colon-Hill sabotaged Plaintiff because Plaintiff made more money than most of the Hispanic Phlebotomist.

156.   As a result of these unlawful actions, Plaintiff has suffered economic damages and severe emotional trauma.

## VII.   **PRAYER FOR RELIEF**

Wherefore, the Plaintiff respectfully prays this Court take jurisdiction over this case and grant judgment against the Defendants. Plaintiff prays that the following relief be awarded:

a. Compensatory damages in an amount this Court shall consider just and fair;

b. Punitive damages in an amount this Court shall consider just and fair;

c. Attorney's fees and reimbursement of cost of the instant action;

d. Reimbursement of back wages and compensation for Plaintiff's lost income;

e. Prejudgment interest; and

f. All other relief that this Court deems just and fair.

## VIII.   **DEMAND FOR JURY TRIAL**

157. Plaintiff demands a jury trial on all issues so triable against Defendants.

DATED this **28th** day of **May**, **2021**

Respectfully submitted by,

Ryan D. Daugherty
Daugherty Law Group, LLC
260 Madison Avenue, Suite 8032
New York, New York 10016
(646) 859-1674
Federal No. ct30807